# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

SHAWN WILSON,

        Petitioner,

v.                                      Case No. 08-12602

THOMAS BIRKETT,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner Shawn Wilson, an habitual offender under Michigan law most recently convicted of home invasion, robbery, and several counts of forcible sexual assault, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. At the time he filed the petition, Petitioner was incarcerated at the Standish Maximum Correctional Facility in Standish, Michigan. Petitioner is presently incarcerated at the Oaks Correctional Facility in Manistee, Michigan. In his application, Petitioner challenges his convictions for four counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, one count of conspiracy to commit first-degree criminal sexual conduct, Mich. Comp. Laws §§ 750.157a and 750.520b, one count of armed robbery, Mich. Comp. Laws § 750.529, one count of conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a and 750.529, one count of first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and one count of conspiracy to commit first-degree home invasion, Mich. Comp. Laws §§ 750.157a and 750.110a(2). The trial court sentenced Petitioner as a habitual offender, third offense, Mich. Comp. Laws § 769.11. Petitioner

argues that ineffective assistance of counsel renders his incarceration unconstitutional. For the reasons set forth below, the court denies the petition. The court also denies a certificate of appealability.

## I. BACKGROUND

The events giving rise to Petitioner's convictions occurred on July 20, 2004, in Grand Rapids, Michigan. As if seeking to test the maxim, "nothing good happens after midnight," the two female victims in this barbaric affair were sitting on the front porch of a house "smoking weed"—marijuana—between 12:30 and 1:30 a.m. They noticed two men walk by the house. About five minutes later, those two men came back with a third man demanding "weed" and money. All three men produced guns and forced the two young women into the house. Additional victims Michael Kennedy and Miguel Perez, whose personal property ultimately was taken, were inside the house. The three intruders hit Perez on the back on the head, beat up Kennedy, and asked where the money and "weed" were. The three went on to sexually assault the women in various ways.

Petitioner, identified as one of the assailants, was charged with five counts of first-degree criminal sexual conduct, one count of conspiracy to commit first-degree criminal sexual conduct, one count of armed robbery, one count of conspiracy to commit armed robbery, one count of first-degree home invasion, and one count of conspiracy to commit first-degree home invasion.[1]

---

[1] The first count of first-degree criminal sexual conduct alleged oral-vaginal penetration; the second count of first-degree criminal sexual conduct alleged oral-penile penetration while armed with a weapon; the third count of first-degree criminal sexual conduct alleged oral-penile penetration of a second victim while armed with a weapon;

At the preliminary examination, the two complainants, B.V. and S.K.,[2] were called as witnesses to establish probable cause to hold Petitioner for trial in circuit court. Michael Kennedy and Miguel Perez, owners of the property underlying the armed robbery charge, did not testify. S.K., however, testified that she was aware of the property theft. The district court judge bound Petitioner over for trial on all the charges except the ones that the prosecutor voluntarily dismissed. Petitioner was tried jointly with co-defendant, Eric Anderson, before a single jury. The third assailant had not yet been identified.

B.V. testified that three men forced themselves into the home at gunpoint. The men ordered S.K. to perform oral sex on B.V., and B.V. was forced to perform oral sex on the third man, who also penetrated her vaginally. B.V. further testified that Petitioner forced her to perform oral sex on him and attempted to engage in penile vaginal intercourse with her. She stated that the bedroom where the sexual assaults occurred was dark, but the hallway was lit, and she could see. The activity lasted approximately 90 to 120 minutes.

_____

the fourth count of first-degree criminal sexual conduct alleged penile-vaginal penetration while armed with a weapon; the fifth count of first-degree criminal sexual conduct alleged penile-vaginal penetration of a second victim while armed with a weapon; the robbery count alleged theft of household items using a weapon; the first-degree home invasion count alleged entering the household unlawfully and committing an assault inside; and the conspiracy counts alleged an agreement with the co-defendant and a third man to commit first-degree criminal sexual conduct, home invasion, and armed robbery. Petitioner initially had been charged with an additional count of armed robbery (count one) and an additional count of home invasion (count nine). The prosecution voluntarily dismissed those counts at the preliminary examination before any testimony was taken.

    [2] The court perceives no need to refer to the sexual assault victims by their proper names.

B.V. was unable to identify Petitioner from a photo array shown to her about seven weeks after the July 20 events.  The first time she was able to identify Petitioner as her attacker was at Petitioner's preliminary examination.  At trial, she testified that she was "very confident" that the defendants were the attackers from July 20.

S.K. testified that she was forced to engage in penile vaginal sex with all three of the intruders.  She was also forced to perform oral sex on Anderson and on the third man.  S.K. identified the two defendants "without hesitation" in a photo lineup about six weeks after the incident.  She also identified both defendants at trial with "one hundred percent" certainty.

Michael Kennedy and Miguel Perez, who resided at the house, testified that a PlayStation video game system was missing after the home invasion.  Perez also testified that he heard one of the perpetrators order another house resident to unhook the PlayStation from the television.  Neither Kennedy nor Perez could identify the perpetrators.

Grand Rapids police detective Les Smith testified that the police department received a tip through its "Silent Observer" informant program implicating Petitioner and the co-defendant by name.  Detective Smith administered the photo lineup to the female complainants.  B.V. was unable to identify anyone, but S.K. confidently identified both Petitioner and his co-defendant after closely examining each photograph in the array.  Detective Smith also testified that the PlayStation referenced above was found a few blocks away from the house.

Dr. John C. Brigham was called by the defendants as an expert witness in the field of eyewitness identification.  He testified extensively about his research and

academic theory regarding eyewitness identification, asserting that eyewitnesses to crimes or other startling events often make mistakes in subsequent attempts to identify the person or persons involved. Dr. Brigham also testified that an initial suggestive identification procedure can effectively taint later identifications. The prosecutor cross-examined Dr. Brigham about the methods he used for his research and their applicability to the facts.

Forensic expert Sara Thibault testified for the prosecution regarding the DNA evidence found at the crime scene. Thibault testified that Petitioner was excluded as a donor of the DNA found at the scene.

After the conclusion of proofs, the trial court advised the attorneys that Juror #14 had notified court officials that she had realized that she had a brief prior contact with B.V. During jury selection, Juror #14 had stated that she did not recognize any of the *names* of the witnesses, but shortly after B.V.'s testimony, the Juror notified the court that she recognized B.V. from an after-school program. Juror #14 was the site coordinator for the after-school program, and B.V. was a student volunteer at the site for a short period of time. Juror #14's only contact with B.V. occurred when she reviewed B.V.'s paperwork once or twice and informed her where she was going to work. Juror #14 told the court that her brief contact with B.V. would not influence her judgment in the case. Petitioner's attorney did not move for dismissal of Juror #14. However, co-defense counsel requested that the court dismiss Juror #14. The trial court did not find cause for removal and permitted Juror #14 to remain on the jury.

The prosecution's theory was that the three suspects worked in concert and that Petitioner was guilty either as a principal or as an aider and abettor. The defense theory was that the wrong people were charged and that the female victims mistakenly identified the defendants as their assailants.

## II. PROCEDURAL HISTORY

On October 26, 2005, Petitioner was convicted of four of the five counts of first-degree criminal sexual conduct, one count of conspiracy to commit first-degree criminal sexual conduct, one count of armed robbery, one count of conspiracy to commit armed robbery, one count of first-degree home invasion, and one count of conspiracy to commit first-degree home invasion, following a jury trial in Kent County Circuit Court. Petitioner was acquitted of one count of first-degree criminal sexual conduct. On December 13, 2005, Petitioner was sentenced as a "habitual offender, third offense," to four concurrent terms of 45 to 90 years' imprisonment for the first-degree criminal sexual conduct convictions, two concurrent terms of 40 to 80 years' imprisonment for the armed robbery and related conspiracy conviction, and two concurrent terms of 10 to 40 years' imprisonment for the home invasion and related conspiracy conviction.

On August 28, 2006, Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claim:

I.    Mr. Wilson was denied his Sixth Amendment right to the effective assistance of counsel, due process under the Fourteenth Amendment and Const. 1963, Art. 1, Section 17, and a fair trial, through trial counsel's failure to:

a. Seek suppression of [B.V.'s] in-court identification;
b. Seek quashal of the robbery related counts; and
c. Move for dismissal of a juror, a teacher, whom [B.V.] had previously assisted in an after-school program.

On November 16, 2006, Petitioner filed a *pro per* supplemental brief with the Michigan Court of Appeals, adding the following claim to his original claim:

> Counsel's failure to file a formal motion requesting appointment of [a] DNA expert when the nexus of the facts required defendant to have a DNA expert or obtain expert assistance in a case where DNA evidence was central, deprived defendant of a fair trial, rendering counsel ineffective.

Also on November 16, 2006, Petitioner filed a *pro per* motion with the Michigan Court of Appeals to remand for an evidentiary hearing on the issue of ineffective assistance of counsel. The Court of Appeals denied Petitioner's motion, *People v. Wilson*, No. 267945 (Mich. Ct. App. Jan. 10, 2007), and on May 30, 2007, the Michigan Supreme Court affirmed the denial. *People v. Wilson*, 731 N.W.2d 697 (Mich. 2007).

On August 21, 2007, the Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Wilson*, No. 267945 (Mich. Ct. App. Aug. 21, 2007). The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *People v. Wilson*, 741 N.W.2d 357 (Mich. 2007).

On June 18, 2008, Petitioner filed his petition for the writ of habeas corpus, raising the following three grounds:

I.    Counsel's failure to file a formal motion requesting appointment of [a] DNA expert when the nexus of the facts required Mr. Wilson to have a DNA expert or obtain expert assistance in a case where DNA evidence was central, deprived Mr. Wilson of a fair trial, rendering counsel ineffective.

II.   Mr. Wilson was denied his Sixth Amendment right to the effective assistance of counsel, due process under the Fourteenth Amendment and Const. 1963, Art. 1, Section 17, and a fair trial, through counsel's failure to:

a. Seek suppression of [B.V.'s] in-court identification;
b. Seek quashal of the robbery related counts; and
c. Move for dismissal of a juror, a teacher, whom [B.V.] had

previously assisted in an after school program.

III.     Mr. Wilson is entitled to a *Ginther* hearing to establish a testimonial record to attack the adequacy of trial counsel's representation during trial on the basis of facts not on record.

In a letter filed on May 14, 2009, Petitioner requested that the court hold his habeas petition in abeyance so that he could present one or more additional claims to the state courts. On September 29, 2009, Petitioner filed a letter requesting that the court withdraw his abeyance petition. The court granted Petitioner's request on November 6, 2009.

## III.  STANDARD

Petitioner's claims are reviewed against the standard imposed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceedings.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Possible error by the state court is not

sufficient to justify granting the habeas petition; the state court's application of federal

law "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-

21 (2003) (quoting *Williams*, 529 U.S. at 409). In addition, a determination of a factual

issue made by a State court is presumed to be correct unless the applicant rebuts the

presumption of correctness with clear and convincing evidence. 28 U.S.C. §

2254(e)(1).

## IV. DISCUSSION

## A. Counsel's Failure to Request a DNA Expert

Petitioner first claims that defense counsel's failure to file a motion requesting a

DNA expert to assist him resulted in ineffective assistance of counsel.

The Michigan Court of Appeals rejected this argument:

Wilson has not demonstrated on appeal that the failure to enlist the aid of
a DNA expert deprived him of a substantial defense. Wilson was able to,
and did in fact, defend against the prosecutor's charges by arguing that no
physical evidence tied him to the scene of the crime. The prosecutor's
case was based upon the eyewitness identification of defendants by the
female victims. In fact, at trial, the prosecutor's forensic experts testified
that the DNA material present on a green glove and on two condoms
found at the scene was sufficient to perform an "exclusion" test, which
showed that the DNA material was not provided by Wilson. Thus, the
DNA evidence presented at trial did not implicate the defendant, but
instead tended to support his argument that he was not one of the
perpetrators of the instant crimes. Nevertheless, Wilson speculates on
appeal that the use of the mitochondrial DNA technique would have
possibly allowed a forensic examiner to find sufficient DNA on items found
at the scene to exonerate him. However, this assertion is without
consequence, because the prosecutor's experts testified, and the
prosecutor acknowledged, at trial that there was no DNA evidence linking
Wilson to the scene of the crime. Therefore, Wilson was not deprived of a

substantial defense by his counsel's decision not to obtain his own expert, presumably to also testify that DNA at the scene was not Wilson's. Wilson's trial attorney's decision not to enlist the assistance of [a] DNA expert under these circumstances was trial strategy, which this court refrains from second-guessing with the benefit of hindsight.

In addition, Wilson fails to show that without his trial counsel's alleged error the outcome of the trial would have been different. Both female victims identified Wilson as one of the assailants. One of the female victims also identified Wilson in a photographic lineup. The lack of physical evidence tying Wilson to the scene of the crime was well established at trial. Wilson has not established that testimony from his own DNA expert reiterating that such was the case would have further undermined the identifications by the victims of Wilson as one of the assailants. Therefore, even absent counsel's alleged error, defendant has not shown that the outcome of the trial would have been different.

*People v. Wilson*, No. 267945, at 3-4 (Mich. Ct. App. Aug. 21, 2007) (citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test that must be satisfied to find trial counsel ineffective. First, counsel's performance must be deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, counsel's deficient performance must prejudice the petitioner. A petitioner is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Habeas review of counsel's trial performance must be "highly deferential." *Id.* at 689. The habeas court must presume that the challenged action is sound trial strategy. *Id.* Trial counsel is not ineffective for failure to make meritless objections. *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998).

Forensic expert Sara Thibault testified that Petitioner was excluded as the donor

of certain DNA found at the scene of the crime, and she was unable to determine whether Petitioner's DNA was present on other evidence found at the crime scene. Defense counsel's strategy in not requesting a DNA expert for the defense is presumed to be a reasonable professional decision because the DNA evidence offered by the prosecution was favorable to the defense. Defense counsel, moreover, cross-examined the prosecution's witness on this point and used the concession to argue reasonable doubt to the jury. Defense counsel is not required to obtain an additional scientific examination if doing so would involve the risk that the defendant may be prejudiced. *See Roush v. Burt*, 313 F. App'x 754, 760 (6th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 2438 (2009); *see also Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007) (stating that defense counsel's decision not to call an expert witness is trial strategy because the expert may discover incriminating evidence). Had defense counsel successfully obtained a second expert to examine the DNA evidence found at the scene, Petitioner would have risked the possibility that the expert would have linked him to the crime scene.

The court concludes that Petitioner's counsel was not ineffective for failing to request an additional DNA expert for the purposes of testing evidence found at the scene. Petitioner has not established that the state court's decision resulted in a violation of *Strickland*. Therefore, Petitioner is not entitled to relief for his claim.

### B. Failure to File a Motion to Suppress Identification

Petitioner argues that defense counsel was ineffective for failing to move to suppress B.V.'s in-court identification. B.V. was unable to identify Petitioner in a photo array, which the police prepared after an anonymous tipster provided the police with

Petitioner's name.  She first identified Petitioner at the preliminary examination.

Petitioner appears to be arguing that the pretrial confrontation at the preliminary

examination was unnecessarily suggestive and that the suggestive confrontation tainted

B.V.'s identification of him at trial because confidence in her judgment had solidified by

then.

The Michigan Court of Appeals rejected Petitioner's argument, holding in part:

> On the record before us, we do not conclude that the prior photographic and corporeal lineups were unduly suggestive.  Even were we to conclude that the victim's in-court identification of Wilson was tainted, however, we would still conclude that that identification was not improper because the victim provided an independent basis for it during her testimony.  The victim testified that she remembered Wilson's and Anderson's faces from an encounter with them on the porch; she was positive of her in-court identification; and she had approximately 1-1/2 to 2 hours to observe Wilson in close proximity during the crimes.  Therefore, because the in-court identification was not improper, Wilson cannot demonstrate that his counsel's failure to move to suppress it fell below an objective standard of reasonableness.
>
> Further, Wilson cannot show that, but for his trial counsel's decision not to challenge the in-court identification, the outcome of the trial would have been different.  At trial, both victims identified Wilson as one of the perpetrators.  While one victim failed to identify Wilson in pretrial lineups, the other victim selected both Wilson and Anderson "without hesitation."  Thus, defendant is not entitled to relief on this claim of ineffective assistance of counsel.

*People v. Wilson*, No. 267945, at 2 (Mich. Ct. App. Aug. 21, 2007) (citations omitted).

An in-court identification violates a defendant's due process rights if the prior

confrontation was "unnecessarily suggestive and conducive to irreparable mistaken

identification."  *Stovall v. Denno*, 388 U.S. 293, 302 (1967).  "[R]eliability is the linchpin

in determining the admissibility of identification testimony."  *Manson v. Brathwaite*, 432

U.S. 98, 114 (1977).

Viewing a suspect at the defense table during a preliminary examination can be suggestive. *Howard v. Bouchard*, 405 F.3d 459, 470 (6th Cir. 2005). However, "[i]f an identification is reliable, it will be admissible even if the confrontation was suggestive." *Id.* at 469. A habeas court must determine "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972). "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200.

As noted above, B.V. was unable to identify Petitioner in a photo array. Her first identification of Petitioner occurred in a courtroom at the preliminary examination. Even if the confrontation at the preliminary examination was unnecessarily suggestive, the identification of Petitioner at trial was nevertheless reliable for the following reasons.

B.V. was able to view her assailant's face for approximately 90 minutes to 120 minutes inside the house, in addition to seeing him outside the house. Although the light in the bedroom where the sexual assaults occurred was not on, the hallway light was on and the bedroom door was open the entire time. B.V. testified that she could see plainly, and that Petitioner's face was not obscured.

B.V.'s degree of attention appears to have been good; she was able to provide considerable detail regarding the incident. Her description of Petitioner also was good. She described Petitioner in a reasonably accurate way as being 5'7" to 5'9" tall and

13

weighing 200-250 pounds. Even though five months elapsed between the crime and the confrontation, she identified Petitioner without hesitation at the preliminary examination, and she was "very confident" in her identification of Petitioner at trial.

To summarize, B.V. had more than an adequate opportunity to view Petitioner on July 20, her attention appears to have been good, and her description of Petitioner was fairly accurate. Although months elapsed between the crime and the confrontation, she was confident of her identification. The *Biggers* factors weigh in favor of finding that B.V.'s in-court identification of Petitioner was sufficiently reliable for admission at trial. Therefore, defense counsel was not ineffective for failing to file a motion to suppress B.V.'s identification.

Even if defense counsel was deficient in failing to move to suppress B.V.'s in-court identification, Petitioner has failed to demonstrate the prejudice required by *Strickland.* Defense counsel called Dr. John C. Brigham as an expert witness in eyewitness identification. Dr. Bingham testified about misidentifications that can result following a traumatic event. The jury was entitled to weigh his testimony appropriately. Any credibility issues with B.V.'s identification were aptly addressed by Dr. Bingham's testimony and by defense counsel's cross-examination of B.V.

In addition, S.K. confidently identified Petitioner throughout the investigation and prosecution of the crimes. The identification of a single eyewitness is sufficient to sustain a conviction, even in the absence of physical evidence. *See United States v. Meyer*, 359 F.3d 820, 826-27 (6th Cir. 2004).

Defense counsel's alleged deficiency in relation to B.V.'s in-court identification of Petitioner did not prejudice the defense. Therefore, the Michigan Court of Appeals'

ruling was not contrary to, or an objectively unreasonable application of, *Strickland*.

## C. Counsel's Failure to File a Motion to Quash

Petitioner argues next that defense counsel was ineffective by failing to move to quash the armed robbery counts at the preliminary examination. The Michigan Court of Appeals rejected Petitioner's argument:

> Wilson argues that his trial counsel was ineffective for failing to move to quash the "robbery related counts" at the preliminary examination. While Wilson correctly points out that the victims of these offenses did not testify at his preliminary examination, any error in the bind over was necessarily vitiated by the presentation of sufficient evidence to support Wilson's convictions for these offenses at trial. *People v. Hall*, 435 Mich. 599, 605; 460 N.W.2d 520 (1990); *People v. Dunham*, 220 Mich. App. 268, 276-277; 599 N.W.2d 360 (1996). Accordingly, Wilson's argument is without merit.

*People v. Wilson*, No. 267945, at 2-3 (Mich. Ct. App. Aug. 21, 2007).

Mich. Comp. Laws § 766.13 requires quashing charges at a preliminary examination if there is no probable cause to charge the defendant.

> A defendant must be bound over for trial if evidence is presented at the preliminary examination that a crime has been committed and there is probable cause to believe that the defendant was the perpetrator. There must be some evidence from which each element of the crime may be inferred. Probable cause that the defendant has committed the crime charged is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense charged. At the preliminary examination, the prosecution is not required to prove each element of the crime beyond a reasonable doubt. Rather, where there is presented credible evidence both to support and to negate the existence of an element of the crime, a factual question that exists should be left to the jury.

*People v. Reigle*, 566 N.W.2d 21, 24 (Mich. Ct. App. 1997) (citations omitted).

The counts in dispute here are the ones charging Petitioner with armed robbery and conspiracy to commit armed robbery. "The elements of armed robbery are: (1) an

15

assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (citation and internal quotation marks omitted). The type of weapon described in the statute is "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon." Mich. Comp. Laws § 750.529.

> A conspiracy is mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or to accomplish a legal act by unlawful means. *People v. Carter,* 415 Mich. 558, 567, 330 N.W.2d 314 (1982). Being a specific-intent crime, conspiracy requires both the intent to combine with others and the intent to accomplish the illegal objective. *Id.*, at 568, 330 N.W.2d 314. The essence of a conspiracy is the agreement itself. Nevertheless, direct proof of agreement is not required, nor is proof of a formal agreement necessary. It is sufficient that the circumstances, acts, and conduct of the parties establish an agreement. *People v. Atley*, 392 Mich. 298, 311, 220 N.W.2d 465 (1974). A conspiracy may be proven by circumstantial evidence or may be based on inference. *People v. Sutherlin*, 116 Mich. App. 494, 498, 323 N.W.2d 456 (1982); *People v. Taurianen*, 102 Mich. App. 17, 31, 300 N.W.2d 720 (1980). See also *People v. Harding*, 163 Mich. App. 298, 322, 413 N.W.2d 777 (1987), vacated and remanded on other grounds, 430 Mich. 859, 420 N.W.2d 826 (1988). The crime of conspiracy is complete upon formation of the agreement. No overt act in furtherance of the conspiracy is necessary. *People v. Juarez*, 158 Mich. App. 66, 73, 404 N.W.2d 222 (1987).

*People v. Cotton*, 478 N.W.2d 681, 688-89 (Mich. Ct. App. 1991).

As noted earlier, S.K. testified at Petitioner's preliminary examination that she and B.V. were smoking marijuana on the porch of the house between 12:30 and 1:30 a.m. on July 20, 2004, when two men, including Petitioner, walked by. Minutes later, the two men came back with a third man asking about "weed" and money. All three men were armed, and forced the two women into the house. Kennedy and Perez were already inside. The three intruders hit Perez and attacked Kennedy, demanding to

know where the money and the "weed" were kept.  S.K. was certain that a PlayStation game was taken because the intruders made a third occupant of the house take the PlayStation out of the wall, and they put it in a bag.  The PlayStation was missing after the men left.  A cell phone and lock box or safe also were taken.  (Tr. Dec. 21, 2004, at 5-9, 15.)

The state district court could have reasonably concluded from this evidence that Petitioner agreed with two other men to rob the occupants of the house on Neland Avenue.  The state district court also could have reasonably concluded that Petitioner was one of three men who assaulted the occupants of the house and took personal property from their presence or person while armed with a weapon described in the statute.  Thus, the prosecutor presented sufficient evidence to bind Petitioner over on charges of armed robbery and conspiracy to commit armed robbery.  Defense counsel's failure to file a motion to quash the robbery and conspiracy charges did not constitute deficient performance, and the Michigan Court of Appeals' ruling is not contrary to Supreme Court precedent.  Petitioner therefore is not entitled to habeas corpus relief on his claim.

### D.  Counsel's Failure to Move to Dismiss a Juror

Petitioner's fourth and final claim about his trial attorney alleges that defense counsel was ineffective for failing to move to dismiss juror Juror #14 based on potentially prejudicial contact with B.V.  The Michigan Court of Appeals rejected this argument, stating:

> [W]hen a juror with knowledge of a party or witness swears that he or she can render an impartial verdict, the juror should not be removed for cause. *People v. Roupe*, 150 Mich. App. 469, 474; 389 N.W.2d 449 (1986).

Therefore, because it would have been futile for Wilson to try to remove Juror #14, Wilson was not denied the effective assistance of counsel by his counsel's failure to join with Anderson's counsel in seeking the juror's removal.

*People v. Wilson*, No. 267945, at 3 (Mich. Ct. App. Aug. 21, 2007) (citations omitted).

"The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." *Madhi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008) (citing *Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976), and *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). "The presence of even a single biased juror deprives a defendant of his right to an impartial jury," but "[a] trial court's finding of impartiality is a factual determination entitled to 28 U.S.C. § 2254(e)'s presumption of correctness." *Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004).

Here, defense counsel for the co-defendant objected to having Juror #14 remain on the jury. Co-defense counsel argued that the juror should be dismissed for cause or struck from the jury by a remaining preemptory challenge. By objecting, co-defendant's counsel acted to secure Petitioner's rights as well as those of his own client. *See People v. Brown*, 195 N.W.2d 806, 809 (Mich. Ct. App. 1972) ("[T]he valid objection by the one defendant concerning a constitutional right . . . inures to the benefit of both defendants."). An objection by Petitioner's attorney would have been superfluous. There is no reason to think that an additional identical objection by Petitioner's attorney would have changed the trial court's ruling. Petitioner cannot demonstrate actual

prejudice by defense counsel's failure to object.

Furthermore, the trial court found that Juror #14 was neither biased nor prejudiced. Petitioner cannot rebut the presumption established by 28 U.S.C. § 2254(e) that the trial court's finding of jury impartiality was proper. Juror #14 stated that she had met briefly with B.V. sometime in the past year, interacting once or twice to review B.V.'s paperwork. Juror #14 had no social or professional relationship with B.V. Juror #14 stated that her minimal contact with B.V. would not influence her decision.

"There is no constitutional prohibition against jurors simply knowing the parties involved . . . ," *McQueen v. Scroggy*, 99 F.3d 1302, 1320 (6th Cir. 1996) (*overruled on other grounds* by *Abdur'Rahman v. Bell*, 392 F.3d 174 (6th Cir. 2004)), and there is sufficient support on the record for the trial court's conclusion that Juror #14 was an impartial juror. Accordingly, defense counsel was not ineffective for failing to move to dismiss juror Juror #14, and Petitioner is not entitled to relief for his claim.

### E. Evidentiary Hearing

Finally, Petitioner argues that he was entitled to an evidentiary hearing in state court on his claim that his trial attorney was ineffective. The Michigan Court of Appeals denied Petitioner's motion to remand for an evidentiary hearing, and the Michigan Supreme Court affirmed the denial in a standard order.

"Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for this court to decide on a petition for habeas corpus relief. Rather, in terms of granting habeas relief, the relevant inquiry is only whether the state court decision was in violation of [Petitioner's] federal constitutional rights." *Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citing *Baze v. Parker*, 371

19

F.3d 310, 322-23 (6th Cir. 2004)).

Petitioner "cites no Supreme Court precedent indicating that a defendant has a constitutional right to an evidentiary hearing in state court to develop his claim of ineffective assistance of counsel on appeal." *Id.* "Thus, [Petitioner] has not shown that the Michigan Court of Appeals' decision to deny his request for an evidentiary hearing was contrary to or an unreasonable application of clearly established federal law." *Id.* at 585.

To the extent that Petitioner seeks an evidentiary hearing in this court, he has no right to a hearing if "the record [is] sufficiently developed." *See Abernathy v. Yukins*, 114 F. App'x 742, 743 (6th Cir. 2004). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[A] federal court must take into account [the deferential standards presented by § 2254] in deciding whether an evidentiary hearing is appropriate." *Id.* "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* A habeas court may decide an ineffective assistance of counsel claim based solely on the trial record "when the record is adequate to assess the merits of the defendant's allegations." *United States v. Hill*, 142 F.3d 305, 308 (6th Cir. 1998).

Petitioner requests an evidentiary hearing to establish a factual record that defense counsel was ineffective for five reasons: 1) defense counsel failed to move to suppress B.V.'s in-court identification; 2) defense counsel failed to move to quash the

two robbery-related charges at the preliminary examination; 3) defense counsel failed to move to excuse juror Juror #14; 4) defense counsel failed to request a forensic expert to examine the DNA evidence found at the crime scene; and 5) defense counsel failed to adequately investigate and present a potential alibi witness.

Petitioner's first four claims have been considered and rejected, as outlined above. The record itself is sufficient to reject these claims. Furthermore, Petitioner fails to submit additional facts in his petition that, even if proven true, would entitle him to habeas relief on any of these four claims. Thus, there is no need to hold an evidentiary hearing on those claims.

Petitioner also is not entitled to an evidentiary hearing regarding his alleged alibi witness. Although an attorney's failure to investigate potential witnesses can constitute ineffective assistance of counsel, *Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005), "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defense attorney's decision not to call a witness is a tactical decision. *See United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). A habeas court should not consider whether the evidence should have been presented, but whether the investigation "*was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

Here, defense counsel conducted a reasonable investigation into Petitioner's possible alibi defense. Defense counsel hired an investigatory agency to conduct an interview with Petitioner's older sister, Alberta Wilson, who informed the investigators that Petitioner and his girlfriend Erica were living at Ms. Wilson's home on July 19-20,

2004.  Ms. Wilson went on to say that Petitioner was always home by 11:00 p.m. because he had a curfew due to being on parole.  Ms. Wilson stated that she would have known if Petitioner were not home on the night in question because her son had epilepsy and she had to get up during the night to attend to him.  Although Ms. Wilson provided her statement on October 12, 2005, she remembered the night in question because her mother had come from Hammond, Indiana to visit her.

The investigators sent defense counsel copies of Ms. Wilson's statement and the interview report.  Defense counsel may have reasonably decided against calling Ms. Wilson as an alibi witness for any number of reasons.  Ms. Wilson was not identified as an alibi witness until shortly before trial, and the close family relationship between Ms. Wilson and Petitioner could have led the jurors to conclude that Ms. Wilson was biased and willing to testify falsely.  Defense counsel also may have wanted to avoid any mention of a "curfew" under which Petitioner was laboring, or any possible mention—or inference—of a parole status; indeed, the court can think of no other situation that might explain how a grown man is subject such a restriction.

Another rational reason for not presenting Ms. Wilson as an alibi witness was the possibility that she would not make a good witness or that she might harm the defendant's position more than help it.  Co-defendant Eric Anderson made an unsuccessful attempt to acquire an alibi witness.  The prosecutor subsequently produced the witness at trial where she testified that Anderson had asked her to be a witness for him and that she was not with him on the night in question.  (Tr. Oct. 21, 2005, at 83-85.)  This left Anderson's attorney in the awkward position of having to explain to the jury that Anderson did not produce a false alibi, but merely had the wrong

22

date in mind.  (Tr. Oct. 25, 2005, at 126-28.)

Even if Petitioner's attorney failed to adequately investigate an alibi defense, the deficient performance could not have prejudiced the defense, given the female victims' confident identification of Petitioner as one of the three suspects.  The record is sufficiently developed for this court to conclude that an evidentiary hearing is unnecessary and that defense counsel was not ineffective.  Furthermore, Petitioner was not deprived of a constitutional right by the denial of his motion for an evidentiary hearing in state court.

### F.  Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.

For all the reasons explained herein, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims.  The court cannot conclude that reasonable jurists would consider the issues

presented as adequate to deserve encouragement.  The court therefore declines to

issue a certificate of appealability.

## V.  CONCLUSION

The state appellate court's rejection of Petitioner's claims did not result in a

decision that was contrary to Supreme Court precedent, an unreasonable application of

federal law as determined by the Supreme Court, or an unreasonable determination of

the facts.  Accordingly,

IT IS ORDERED that the petition for writ of habeas corpus [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


 S/Robert H. Cleland                                    
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  August 16, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 16, 2010, by electronic and/or ordinary mail.

 S/Lisa Wagner                                
Case Manager and Deputy Clerk
(313) 234-5522